# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL NO. 1:06CV221

| | |
|---|---|
| JAYNE CODY, ) </br> ) </br> Plaintiff, ) </br> ) </br> Vs. ) </br> ) </br> JO ANNE B. BARNHART, ) </br> **Commissioner of Social Security** ) </br> **Administration,** ) </br> ) </br> Defendant. ) </br> ) | **MEMORANDUM** </br> **AND ORDER** |

**THIS MATTER** is before the Court on the parties' cross motions for summary judgment. For the reasons stated herein, the Plaintiff's motion is denied and the Defendant's motion is allowed.

## I. STANDARD OF REVIEW

This Court does not conduct a *de novo* review of the decision of the Administrative Law Judge (ALJ). In fact, under the statutory scheme of the Social Security Act, the reviewing court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were

reached through application of the correct legal standard." ***Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); 42 U.S.C. § 405(g) (1988).** Substantial evidence is defined as that which "a reasonable mind might accept as adequate to support a conclusion." ***Id.*** "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." ***Id.*; *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).** If there is sufficient evidence to withstand a motion for a directed verdict had the case been before a jury, then the evidence is substantial and the ALJ's decision may not be overturned. ***Id.*** "It is not our place either to weigh the evidence or to substitute our judgment for that of the Secretary if that decision was supported by substantial evidence." ***Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).** Thus, the issue for resolution here "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." ***Craig, supra.***

Each party has moved for summary judgment, claiming they are entitled to judgment as a matter of law. Summary judgment is appropriate if there is no genuine issue of material fact and judgment for the moving

party is warranted as a matter of law.  **Fed. R. Civ. P. 56(c).**  A genuine issue exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party.  ***Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).**

Where the parties have cross-moved for summary judgment, the Court will consider each motion separately.  Thus, in considering the Plaintiff's motion, Plaintiff as the moving party has an initial burden to show a lack of evidence to support Defendant's case.  ***Shaw, supra* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).**  If this showing is made, the burden then shifts to the Defendant who must convince the Court that a triable issue does exist.  ***Id.***  Such an issue will be shown "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]."  ***Id.***  A "mere scintilla of evidence" is not sufficient to defeat summary judgment.  ***Id.***  After consideration of the Plaintiff's motion, the same procedure is used in connection with Defendant's motion for summary judgment.

Thus, in considering the facts of the case for purposes of these cross-motions, the Court will view the pleadings and material presented in

the light most favorable to the nonmoving party.  ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).**

In order to receive disability insurance benefits, Plaintiff must show that she was disabled on or prior to December 31, 2006, the date on which she last met the insured status under the Social Security Act.  ***See,* Transcript of Proceedings, filed September 6, 2006, at 56; *Kasey v. Sullivan*, 3 F.3d 75, 77 n.3 (4th Cir. 1993); 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.131; *Wilkins v. Secretary*, 925 F.2d 769, 771 n.2 (4th Cir. 1991); *Fagg v. Chater*, 106 F.3d 390 (table), 1997 WL 39146 \*1 (4th Cir. 1997).**

## II.  PROCEDURAL HISTORY

The Plaintiff filed an initial application for disability insurance benefits on December 9, 2002, alleging a disability onset date of November 4, 2002; this claim was denied initially and upon reconsideration.  **Plaintiff's Memorandum in Support of Motion for Summary Judgment, filed November 7, 2006, at 2; Transcript, *supra*, at 52, 36, 42.**  She timely filed a request for a hearing before an Administrative Law Judge (ALJ) and such hearing was held on December 19, 2005.  **Transcript, at 260.**  The

ALJ issued an unfavorable decision on March 13, 2006, and the Plaintiff requested Appeals Council review on May 11, 2006.  *Id.* **at 21, 8-9.**  The Appeals Council rejected her request for review on June 1, 2006.  *Id.* **at 4**.  On July 24, 2006, the Plaintiff filed this an action asking the Court to reverse the decision of the Appeals Council, the ALJ's decision on which it was based, and for the payment of disability benefits by the Social Security Administration.  Following the Defendant's answer on September 6, 2006, the parties filed their respective motions for summary judgment on November 7, 2006, and December 18, 2006.

### III.  FINDINGS OF FACT

The Plaintiff testified at the hearing that she was 46 years old; a high school graduate with two years of college resulting in an associate degree in computer science and a certificate in drafting; that she can read and write; that she has no current income; she is divorced and has one child who is over the age of 18.  *Id.* **at 265-67.**  She testified that her normal weight is about 200 pounds; that she lives in a mobile home with an elderly aunt; she has a driver's license and she does drive to doctor visits and to the store and on an as needed basis.  *Id.* **at 267-68.**  She also testified that

she became ill in November 2002 with diverticulitis[1]; when she discussed her illness with her supervisor and attempted to make arrangements to work from home, she was fired. **Id. at 269-71.** She tried to work as a cook's helper at a country club, but she was only able to do so for about a month. **Id. at 272.** She testified that her last full time employment was as a computer programmer in California from 2001 to 2002 and before that, she was employed by DeKalb Sanitary District in Illinois in a clerical capacity in 1994 and 1995. **Id. at 273-74.** She also testified that she worked for other companies primarily as a computer programmer from 1995 until she moved to California in 2001. **Id. at 275-76.**

She testified that she can no longer work due to fibromyalgia[2] and chronic pain and depression from dealing with the pain and associated problems caused by her ill health. **Id. at 278.** She testified that she suffers from pain in her neck, back, right shoulder and forearm, both hips, both hands, and below the knees in both legs; she also testified that she suffers

---

[1] "[H]erniations of the mucosa of the colon through the muscular layers of the bowel wall, which may become inflamed." ***Dorland's Illustrated Medical Dictionary* (28th ed.).**

[2] Inflammation and pain involving the fibers of the muscles. ***Dorland's, supra.***

from migraine headaches on a daily basis. *Id*. She stated that her health problems began in 1997 after a "third" car accident and then in 2000, the problems were compounded when she had a side impact collision with another vehicle. *Id*. **at 279-80.** She testified that on a scale of one to ten, her pain rates about eight. *Id*. **at 281.** She described her pain as being constant; that her pain medication causes her to experience "brain fogginess" and she has problems recalling details; that she is unable to bend or stoop because of the pain in her knees and legs; she is unable to use her hands and fingers for a task such as keyboarding for more than a few minutes due to the resulting tingling and numbness she experiences in her fingers; and her right shoulder is particularly affected by the pain. *Id*. **at 281-82.** She described her depression as severe and stated that it caused her to be "completely anti-social;" she also stated that her anti-depressant medication keeps her from having suicidal thoughts. *Id*. **at 284.** She is receiving therapy for her depression and testified that it is helping control her suicidal thoughts. *Id*. **at 284-85.** She testified that she has difficulty sleeping due to pain in her shoulder, neck, arms and legs. She stated that although she will take pain medication, she will not usually go back to sleep until the early morning hours. *Id*. **at 285.** The Plaintiff

testified that she tries to do household chores but is limited in what she can accomplish due to her pain and resulting fatigue. *Id.* **at 285-86.** Although her elderly aunt with whom she lives does not rely on her for assistance, the Plaintiff tries to help her with household chores such as cooking and cleaning. *Id*. Trips to the mall, grocery store and such are limited to an as needed basis due to the need to conserve resources. *Id.* **at 286-87.** The Plaintiff testified that she takes Effexor, Wellbutrin, BuSpar, and Excedrin Migraine and aspirin for her pain. *Id.* **at 288-89.** She advised that the Excedrin works relatively well and does not cause the side effects of vomiting and nausea typical of prescription pain relievers. *Id.* **at 289.** She also testified that she rarely attends any social events or church; that she does not do any yard work or gardening; that she is not able to pursue her hobbies any longer; she does enjoy reading and sometimes watches movies; she has no pets; and she is pretty much estranged from her family and friends. *Id.* **at 291-94.**

The record contains medical reports from Dr. C. D. Nelson of Redding, California, for the period August 16, through November 21, 2002. *Id*. **at 161-65.** During these visits, Dr. Nelson found that the Plaintiff was experiencing work-related stress, was complaining of low back and left side

pain as well as constipation. *Id*. In a letter dated September 3, 2002, he advised "To Whom It May Concern" that the Plaintiff was suffering from "a rather severe illness and can only work 3 days a week for the next two weeks." *Id*. at 164. The results of a barium enema on September 19, 2002, revealed an elongated colon and sigmoid diverticulosis; a pelvic ultrasound performed November 11, 2002, showed an "enlarged bulky uterus with at least one fibroid noted . . . [and] small right ovarian cyst." *Id*. at 166, 167.

On November 18, 2002, Dr. Thomas Perry saw the Plaintiff in consultation after the pelvic ultrasound and blood studies were performed. *Id*. at 126. Dr. Perry advised the Plaintiff that her CA-125[3] level was 56 which might indicate the presence of ovarian cancer. He also advised that other factors such as fibroids, diverticulitis, and pelvic inflammatory disease can also cause an elevation of the CA-125 level. *Id*. The risks and benefits of various treatments were explained and discussed; the Plaintiff was advised to seek a second opinion.

---

[3] CA-125, or cancer antigen, is a "protein that is a so-called tumor marker . . . which is a substance that is found in greater concentration in . . . ovarian cancer cells than in other cells." A "normal" value is considered less than 35 U/ml. **Melissa Conrad Stoppler, M.D., "What is CA 125?", http://www.medicinenet.com/ca_125/article.htm.**

On November 22, 2002, the Plaintiff was seen by Dr. Charles H. Cook for a second opinion regarding a hysterectomy. *Id*. **at 156.** Although he could not explain the source of her abdominal pain, he advised that she should resolve her severe constipation before proceeding with the hysterectomy. He recommended that she take Citrocel daily and eat a bowl of hot oatmeal or cereal every morning and continue a diet which contained more food high in bulk. *Id*. **at 157.**

Plaintiff saw Dr. Richard Miller of the Miller Chiropractic clinic for the period November 12, 2002, through February 28, 2003. *Id*. **at 136-140.** The Plaintiff complained to Dr. Miller of progressive neck and shoulder aches and stiffness. He diagnosed the Plaintiff as suffering from "chronic, cervicothoracic [and] lumbar sprain injuries [with] myofascial pain syndrome. Moderate to severe at times [with] flare-ups." *Id*. **at 137.** He indicated that it was not likely she would make a complete recovery due to her current state of health and the attendant problems of being overweight, depressed, multiple medical conditions, poor mobility and tender points; he advised that her prognosis was not good without future treatment and management. *Id*.

On February 6, 2003, in response to a inquiry from the California Employment Development Department, Dr. Nelson advised that the Plaintiff continued to suffer from diverticulitis and fibroids and that she had developed arthritis in her hips.  *Id*. **at 155.**  He also advised that she suffered from abdominal pain and pain in both hips that would prevent her from returning to work on a regular basis and that she needed a hysterectomy but had no insurance.  *Id***.**  He also noted that she was very depressed and had experienced trouble sleeping.  *Id*. **at 154.**

On March 7, 2003, the Plaintiff was evaluated for the California Department of Social Security Disability and Adult Programs by Dr. Scott R. Miller, Psychiatrist.  *Id*. **at 141-47.**  On examination, Dr. Miller found the Plaintiff possessed a depressed mood and constricted affect; however, she was able to understand, remember and carry out simple, detailed and complex instructions; she was able to relate and interact with supervisors and coworkers; she was mildly impaired in her ability to maintain concentration, attention, persistence and pace; she was able to associate with day-to-day work activity; she was moderately impaired in her ability to adapt to the stresses common to a normal work environment; she was able to maintain regular attendance at work and perform work activities on a

consistent basis; she was able to perform work activities without special or additional supervision; and she was capable of independently managing funds in an appropriate manner. *Id*. **at 146.**

On November 9, 2005, the Plaintiff was seen by Dr. Craig A. Mills. *Id*. **at 228.** At this initial visit, the Plaintiff submitted medical records from her physicians in California and Illinois; she also advised Dr. Mills of many of the same subjective complaints described to her other physicians. *Id*. His report of the physical examination was essentially within normal limits, except he did note some tenderness throughout her body and especially in the neck and shoulder areas. *Id*. **at 229.** His impression of the Plaintiff was essentially that of her other physicians, *i.e.*, she was suffering from fibromyalgia, chronic pain syndrome, history of cervical arthropathy; sleep disturbance; and history of depression. *Id*. Dr. Mills further noted that the Plaintiff would "have a difficult time keeping a job due to the chronic pain that she has." He noted that he planned to refer her for physical therapy or for evaluation at a chronic pain center. He encouraged her to follow up with a psychiatrist. *Id*. **at 230.**

A report from Suzanne Gloor, a therapist with the Buncombe County Health Center, dated November 30, 2005, states that she has been

working with the Plaintiff since August 22, 2005, and that Plaintiff has made little to no progress in managing her depression or pain. Ms. Gloor also noted that Plaintiff's "lack of income, her reliance on an elderly aunt for a place to live, and her continued sense of hopelessness and helplessness are major barriers in her moving forward." **Id. at 231.** Ms. Gloor also opined that the Plaintiff was unable to work given her current level of functioning. However, she advised that the Plaintiff possessed a "strong work history and skills that would enable her to get back into the work force when and if she could better actively manage her depression and chronic pain conditions." **Id. at 232.**

A functional capacity assessment was completed by Patricia O'Neill, M.D., in August 2003. **Id. at 183.** Dr. O'Neill found that the Plaintiff could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; she could stand and/or walk and sit (with normal breaks) about 6 hours in an 8-hour workday; she was unlimited in her abilities to push and/or pull; and Dr. O'Neill found that the Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations that would prevent her from performing "full light level work." **Id. at 184-89.**

On September 2, 2003, Donald R. Walk, M.D., completed a mental residual functional capacity assessment of the Plaintiff. *Id*. **at 191.** He opined that the Plaintiff was not significantly limited in her understanding and memory, social interaction, or adaptation; and she possessed only a moderate limitation in her ability to complete a normal workday primarily due to her depressive features. *Id*. **at 191-93.** Dr. Walk stated that the Plaintiff suffered from a depressive syndrome characterized by a pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, or difficulty concentrating or thinking. *Id*. **at 197.** However, this affective disorder caused only a mild degree of limitation in the restriction of her daily activities and in maintaining social functioning and a moderate limitation in maintaining concentration, persistence, or pace. *Id*. **at 204.**

## IV. DISCUSSION

For purposes of Social Security disability insurance benefits, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A).** The regulations prescribe a five-step sequential process for determining disability. *See,* **20 C.F.R. § 404.1520(a)(4).** The first step requires a determination of whether the claimant is engaged in "substantial gainful activity;" if so, a claim for disability benefits will be denied. **20 C.F.R. § 404.1520(a)(4)(I).** If the claimant is not so engaged, the second step is to determine whether the claimant has a severe medically determinable physical or mental impairment (or combination of impairments) that is expected to result in death, or that has lasted or can be expected to last for a continuous period of at least twelve months. **20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509.** If such impairment does not exist, a finding of "not disabled" is entered. However, if a claimant does suffer from such an impairment, the analysis moves to the third step which requires consideration of the medical severity of the impairment or combination of impairments. **20 C.F.R. § 404.1520(a)(4)(iii).** If the impairment or combination of impairments meets or equals one of the listings provided in Appendix 1 of 20 C.F.R. Part 404, Subpart P, a finding of "disabled" is warranted and the analysis will terminate. *Id*. If the

claimant cannot satisfy the third step, the analysis moves forward to consideration of the claimant's past relevant work and residual functional capacity. If the claimant can perform her past relevant work, the analysis ends and a determination of "not disabled" is appropriate. **20 C.F.R. § 404.1520(a)(4)(iv).** It was at this step that the ALJ reached his conclusion that the Plaintiff was "not disabled" and, therefore, not entitled to benefits under the Act.

Where a claim for social security benefits has been denied and the case presented to the district court, the Court does not conduct a *de novo* review of the ALJ's decision. **Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).** Rather, the Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." **Craig, 76 F.3d at 587; Pittman v. Massanari, 141 F.Supp.2d 601, 605-06 (W.D.N.C. 2001); 42 U.S.C. § 405(g).**

The ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. He specifically found Plaintiff's depressive disorder failed in this regard. **Transcript of**

**Proceedings, at 17.** He observed that while Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," her statements as to their "intensity, duration and limiting effects . . . [were] not entirely credible." *Id.* **at 18.** As to her claim that she needed a hysterectomy but could not afford the operation, he noted that after April 2003, there was no evidence she had "sought or received treatment from any other medical source for pelvic pain, uterine or fibroid tumors, constipation, or diverticulitis." *Id*. He, therefore, concluded that none of those medical problems were debilitating. *Id*. The ALJ determined that the Plaintiff could perform light work that would not require meeting production quotas and that she could also return to her "past relevant work experience as a computer programmer, a drafter for an engineering firm, a receptionist, and a secretary." *Id.* **at 20-21.** Given the meticulous analysis of the evidence by the ALJ and his opportunity to make credibility determinations as to Plaintiff as well as the sources relied upon by her in support of her claim for benefits, the Court concludes that his findings are supported by substantial evidence and reached through application of the correct legal standard. ***Craig v. Chater, supra.***

"The burden of proof and production rests on the claimant during the first four steps[.]" **Burch v. Apfel, 9 F. App'x 255, 257 (4th Cir. 2001) (citing Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)).** The ALJ correctly found that the Plaintiff had failed to meet this burden.

The ALJ concluded that the Plaintiff's contentions as to her severe limitations were not entirely credible. He also concluded that the medical documentation contained in the record did not support her contentions. In fact, he noted that Dr. Nelson's opinion as to the Plaintiff's disability (found on an insurance form) was not persuasive and was rebutted by Dr. Cook's finding that she was not disabled. **Transcript, at 18.** It is further noted that Dr. Nelson was of the opinion that Plaintiff could return to work in six months. Such an opinion would not support a finding that Plaintiff is disabled under the provisions of the Social Security Act.

Nor is it surprising that the ALJ gave little weight to the opinion of Suzanne Gloor of the Buncombe County Medical Center. **Id. at 19.** Her opinion is not an acceptable medical source. **20 C.F.R. § 404.1513(a).** Even so, the ALJ thoroughly considered her opinion that Plaintiff is disabled and concluded that it should receive "little weight and is rebutted by more persuasive evidence of record." **Transcript, *supra*, at 19.**

As set forth in more detail in this opinion, the Court has reviewed the ALJ's decision and the entirety of the record, particularly as to medical opinions and functional evaluations, and finds the decision to be supported by substantial evidence, reached by application of the correct legal standard, and affirms same in its entirety.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion for summary judgment is **DENIED**, and the Defendant's motion for summary judgment is **ALLOWED**.

A Judgment affirming the Commissioner's decision and dismissing this action is filed herewith.

Signed: April 12, 2007

Lacy H. Thornburg
United States District Judge